IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFF WINKELMAN<br>3411 East Sprague Road<br>Seven Hills, Ohio 44131<br><br>     Plaintiff,<br><br>    v.<br><br>UNIVERSITY HOSPITALS HEALTH<br>SYSTEM, INC.<br>11100 Euclid Avenue<br>Cleveland, Ohio 44106<br><br>  **Serve also:**<br>  University Hospitals Health System,<br>  Inc.<br>  c/o ACFB Incorporated<br>  200 Public Square, Suite 2300<br>  Cleveland, Ohio 44114<br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Jeff Winkelman, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Winkelman is a resident of the city of Seven Hills, county of Cuyahoga, state of Ohio.

2. University Hospitals Health System, Inc. ("University Hospitals") is a domestic corporation for profit that operated a business located at 11100 Euclid Avenue, Cleveland, Ohio 44106.

3. University Hospitals was at all times hereinafter mentioned an employer within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

4. University Hospitals was at all times hereinafter mentioned an employer within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq*.

5. University Hospitals was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

**JURISDICTION & VENUE**

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Winkelman is alleging a Federal Law Claim under 29 U.S.C. § 2601 *et seq*. and 42 U.S.C. 126 § 12101 *et seq*.

7. All of the material events alleged in this Complaint occurred in Cuyahoga County.

8. Within 300 days of the conduct alleged below, Winkelman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), against Defendant.

9. On or about August 25, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Winkelman regarding the Charges of Discrimination brought by Winkelman.

10. Winkelman received his Right to Sue letter from the EEOC – which has been attached hereto as Plaintiff's Exhibit A.

11. Winkelman has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Winkelman has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

13. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and (4).

14. Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTS**

15. Winkelman is a former employee of University Hospitals.

16. Winkelman began working for University Hospitals in or around 2013.

17. University Hospitals employed Winkelman as a Hemodialysis Technician.

18. Winkelman suffers from Hypersomnia and Obstructive Sleep Apnea ("Sleep Disorders").

19. Winkelman's Sleep Disorders causes him to have excessive daytime sleepiness.

20. Winkelman's Sleep Disorders constitute physical impairments.

21. Winkelman has a record of the Sleep Disorders.

22. Winkelman's Sleep Disorders substantially impair one or more of his major life activities, including sleeping and working.

23. As a result of suffering from the Sleep Disorders, Winkelman was and is disabled.

24. Alternatively, Defendant perceived Winkelman to be disabled.

25. Despite any real or perceived disability, Winkelman was able to complete his essential job duties with or without accommodation(s).

26. Winkelman informed Defendant of his Sleep Disorders, including Megan Nodge.

27. Nodge was Winkelman's immediate supervisor.

28. During all material events asserted herein, Nodge has and/or had authority to hire, fire, and/or discipline employees.

29. Nodge did not participate in the decision to hire Winkelman.

30. Defendant is subject to the provisions of the FMLA.

31. As of November 16, 2021, Winkelman qualified for protected leave under the FMLA.

32. As of November 16, 2021, Winkelman worked for Defendant for at least 12 months.

33. As of November 16, 2021, Winkelman had at least 1,250 hours of service for Defendant during the previous 12 months.

34. As of November 16, 2021, Winkelman was entitled to utilize FMLA leave for his Sleep Disorders.

35. During his employment, Winkelman utilized FMLA for his Sleep Disorders.

36. Due to his Sleep Disorders, Winkelman requested accommodations from Defendant, including having not working more than two days in a row ("Schedule Accommodation").

37. The Schedule Accommodation was reasonable.

38. The Schedule Accommodation would not have caused Defendant undue burden.

39. Defendant failed to provide Winkelman with the Schedule Accommodation.

40. Defendant failed to engage in the interactive process to determine whether accommodaitons were available for Winkelman.

41. On or around May 20, 2022, Defendant terminated Winkelman's employment.

42. Defendant terminated Winkelman's employment because he is disabled.

43. Alternatively, Defendant terminated Winkelman's employment because they perceived Winkelman to be disabled.

44. Defendant terminated Winkelman's employment in retaliation for taking FMLA leave.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*

45. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

46. Winkelman suffers from the Sleep Disorders.

47. Winkelman's Sleep Disorders causes him to have excessive daytime sleepiness.

48. Winkelman's Sleep Disorders constitute physical impairments.

49. Winkelman has a record of the Sleep Disorders.

50. Winkelman's Sleep Disorders substantially impair one or more of his major life activities, including sleeping and working.

51. As a result of suffering from the Sleep Disorders, Winkelman was and is disabled.

52. Alternatively, Defendant perceived Winkelman to be disabled.

53. Despite any real or perceived disability, Winkelman was able to complete his essential job duties with or without accommodation(s).

54. Defendant treated Winkelman differently than other similarly-situated employees based on his disabling condition.

55. Alternatively, Defendant treated Winkelman differently than other similarly-situated employees based on his perceived disabling condition.

56. On or about May 20, 2022, Defendant terminated Winkelman's employment without just cause.

57. Defendant terminated Winkelman's employment based his disability.

58. Alternatively, Defendant terminated Winkelman's employment based his perceived disability.

59. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Winkelman based on his disability.

60. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Winkelman based on his perceived disability.

61. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Winkelman based on his disabling condition.

62. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Winkelman based on his perceived disabling condition.

63. Winkelman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

64. As a direct and proximate result of Defendant's conduct, Winkelman suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

65. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

66. Winkelman suffers from the Sleep Disorders.

67. Winkelman's Sleep Disorders causes him to have excessive daytime sleepiness.

68. Winkelman's Sleep Disorders constitute physical impairments.

69. Winkelman has a record of the Sleep Disorders.

70. Winkelman's Sleep Disorders substantially impair one or more of his major life activities, including sleeping and working.

71. As a result of suffering from the Sleep Disorders, Winkelman was and is disabled.

72. Alternatively, Defendant perceived Winkelman to be disabled.

73. Despite any real or perceived disability, Winkelman was able to complete his essential job duties with or without accommodation(s).

74. Defendant treated Winkelman differently than other similarly-situated employees based on his disabling condition.

75. Alternatively, Defendant treated Winkelman differently than other similarly-situated employees based on his perceived disabling condition.

76. On or about May 20, 2022, Defendant terminated Winkelman's employment without just cause.

77. Defendant terminated Winkelman's employment based his disability.

78. Alternatively, Defendant terminated Winkelman's employment based his perceived disability.

79. Defendant violated R.C. § 4112.02 when it discharged Winkelman based on his disability.

80. Alternatively, Defendant violated R.C. § 4112.02 when it discharged Winkelman based on his perceived disability.

81. Defendant violated R.C. § 4112.02 by discriminating against Winkelman based on his disabling condition.

82. Alternatively, Defendant violated R.C. § 4112.02 by discriminating against Winkelman based on his perceived disabling condition.

83. Winkelman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

84. As a direct and proximate result of Defendant's conduct, Winkelman suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

85. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Winkelman informed University Hospitals of his disabling condition.

87. Winkelman requested accommodations from Defendant to assist with his disabilities, including not working more than two days in a row.

88. Winkelman's requested accommodations were reasonable.

89. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

90. Defendant failed to engage in the interactive process of determining whether Winkelman needed an accommodation.

91. Defendant failed to provide an accommodation.

92. As a direct and proximate result of Defendant's conduct, Winkelman suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. 4112.01 *et seq.*

93. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Winkelman informed Defendants of his disabling condition.

95. Winkelman requested accommodations from Defendant to assist with his disabilities, including not working more than two days in a row.

96. Winkelman's requested accommodations were reasonable.

97. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

98. Defendant failed to engage in the interactive process of determining whether Winkelman needed an accommodation.

99. Defendant failed to provide an accommodation.

100. Defendant violated R.C. § 4112.02 by failing to provide Winkelman a reasonable accommodation.

101. Winkelman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

102. As a direct and proximate result of Defendant's conduct, Winkelman suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*

103. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. During his employment, Winkelman requested accommodations from Defendant due to his Sleep Disorders.

105. Requesting an accommodation is protected activity under the law.

106. Defendant was aware of Winkelman's accommodation request.

107. Subsequent to Winkelman's accommodation request, Winkelman was subject to disciplinary actions.

108. Subsequent to Winkelman's accommodation request, Defendant terminated Winkelman's employment.

109. Defendant's actions were retaliatory in nature based on Winkelman's protected activity.

110. Winkelman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

111. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Winkelman, he suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VI: RETALIATION IN VIOLATION OF THE FMLA

112. Winkelman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Defendant is subject to the provisions of the FMLA.

114. As of November 16, 2021, Winkelman qualified for protected leave under the FMLA.

115. As of November 16, 2021, Winkelman worked for Defendant for at least 12 months.

116. As of November 16, 2021, Winkelman had at least 1,250 hours of service for Defendant during the previous 12 months.

117. As of November 16, 2021, Winkelman was entitled to utilize FMLA leave for his Sleep Disorders.

118. During his employment, Winkelman utilized FMLA for his Sleep Disorders.

119. After Winkelman utilized his qualified FMLA leave, Defendant retaliated against him.

120. Defendant retaliated against Winkelman by subjecting him to disciplinary actions.

121. Defendant retaliated against Winkelman by terminating his employment.

122. Defendant willfully retaliated against Winkelman in violation of 29 U.S.C. § 2615(a).

123. As a direct and proximate result of Defendant's wrongful conduct, Winkelman is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Winkelman demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Winkelman to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Winkelman for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Winkelman's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Taurean.Shattuck@spitzlawfirm.com

*Attorney For Plaintiff*

11

## JURY DEMAND

Plaintiff Jeff Winkelman demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Taurean J. Shattuck*
>Taurean J. Shattuck (0097364)
>**SPITZ, THE EMPLOYEE'S LAW FIRM**